(88 South. 238)

No. 24482.

**DRY CREEK LUMBER CO. v. LITTRELL (two cases). SAME v. PIGFORD. In re SANDERS.**

(April 4, 1921.)

*(Syllabus by Editorial Staff.)*

**Mandamus ⬡31—Court held not to have abused its discretion in delaying trial and writ of mandamus to compel fixing denied.**

In a mandamus proceeding to compel trial judge to fix for trial a suit against organizers of a corporation, *held*, that trial court did not abuse its discretion in delaying the trial of the cases, it not appearing from statements made in the course of arguments whether an estoppel pleaded by the defendants was a good defense, depending on whether the corporation was solvent or insolvent, or that the suit was in the interest of the corporation itself or its creditors, and the stock in the hands of defendants was tied up by an injunction, and that the many demands might be of doubtful merit, especially in view of the fact that receivership proceedings were pending in such court.

Suits by the Dry Creek Lumber Company against Fred H. Littrell and Monroe A. Pigford, respectively, consolidated. Application for mandamus by plaintiff to compel the fixing the case for trial. Application denied.

Kay & Plauche, of De Ridder, and Cline & Bell, of Lake Charles, for applicant.

Frank E. Powell, of De Ridder, for respondents.

PROVOSTY, J. The two defendants in these three consolidated suits, Littrell and Pigford, owned a sawmill and timber lands and were conducting a sawmill business when in July, 1919, they and Samuel W. Plauche organized the plaintiff corporation to take over the business. By an agreement incorporated in the charter of the corporation the liabilities of the partnership were fixed at $15,884.22, and the assets at $29,884.22, "according to the list and appraisement hereto attached," leaving an excess of assets over liabilities of $14,000. The capital stock was fixed at $25,000, divided into 250 shares of $100. Each of the defendants subscribed to 70 shares; Plauche to 3. Littrell was to be president, and Plauche secretary-treasurer. Defendants paid for their 140 shares by turning over to the corporation their interest in the partnership.

In January, 1920, the three stockholders voted a salary bonus of $1,500 to each of the two defendants in compensation of their services as the active managers of the affairs of the company, and in payment of this bonus issued to them 30 shares.

The 15 shares of Pigford were, however, issued to Littrell. This was in satisfaction of a credit which had been carried on the books of the partnership and was being carried on those of the corporation in his favor and against Pigford. He had transferred a part of his interest in the partnership to Pigford for this $1,500 on the condition that the amount should be payable only out of

any future net profits of the partnership coming to Pigford.

At a meeting of the same three stockholders in March, 1920, a resolution was adopted authorizing the issuance of 30 shares to each of the defendants in recognition of services rendered by them to the corporation in negotiating the purchase of lands, and 8 shares to Plauche, who was a lawyer, for his legal services in examining the titles to the lands; and this stock was accordingly issued. Four of the Plauche 8 shares were, however, issued to his law partner, P. C. Kay.

The control of the corporation having passed into other hands, the corporation brought these three suits on October 1, 1920, asking in the suit against Pigford and in one of the suits against Littrell that the defendants return the 60 shares of stock issued to them by way of salary bonus and in recognition of services as aforesaid, or else pay the $6,000 represented by same, and that they be condemned to pay $5,662.94 each, being the difference between the valuation at which the assets of the partnership were taken over by the corporation and their real value.

The other suit against Littrell is for $440 which he is alleged to have paid to himself for his salary as president of the corporation in excess of the amount due him.

On October 27, 1920, 26 days after the filing of these suits, the corporation was put in the hands of a receiver by an order rendered by the predecessor in office of the learned respondent judge; and soon thereafter the receiver made himself a party plaintiff in the suits.

We omit mention of certain pleas and the rulings thereon concerning which no complaint is made.

On October 18, 1920, default was entered, and on October 21, 1920, answer was filed in the suit against Littrell for the $440.

On October 27, 1920, there was filed in each of the other suits a so-called exception and plea of estoppel which apparently raised every issue that could possibly be raised on the merits, and which the counsel agreed, and the court ordered, should stand as an answer unless some further answer should be filed within one week; and the three cases were then consolidated for trial, and fixed for December 16, 1920.

On December 13, 1920, this assignment was set aside.

Thereafter an exception of vagueness coupled with a motion to elect was filed asking that the receiver declare whether he was suing in behalf of the corporation or of its creditors, and, the motion having been sustained, he on January 5 and 18 declared that the suits were in behalf of the corporation.

On January 19, 1921, plaintiff moved that the order for the consolidation of the suits be rescinded; and the motion was denied.

On that same day a default was entered on motion of plaintiff's counsel; and plaintiff moved that the cases be fixed for trial for January 27, 1921. Defendant objected to the fixing, and, after hearing argument, the learned respondent judge took the matter under advisement.

On January 21, 1921, he disallowed the motion.

On February 2, 1921, plaintiff moved that the cases be fixed for trial for March 7, 1921, and, after hearing argument, the respondent judge disallowed the motion.

Plaintiff then gave notice that he would apply to the Supreme Court for a mandamus to compel the fixing of the case, and the matter now to be considered is the said application.

The two suits for the return of the shares of stock, or else the payment of their face value, are accompanied by injunctions to

enjoin the defendants from in any way disposing of the stock pending the suits.

Our learned brother's reason for putting off the trial of the cases is that from a knowledge which he himself has and from statements made in the course of the arguments before him by the attorneys for the defendants who besides representing the defendants represent creditors of the corporation, the corporation is in all probability solvent, but its real condition can be ascertained only by a liquidation, and that the estoppel pleaded by the defendants may be a good defense or not accordingly as the corporation is or not solvent and the suits in the interest of the corporation itself or of its creditors, and that, considering the large amount of costs that would have to be incurred in the trial of the suits, it was to the interest of all parties concerned that the ascertainment of the condition of the company should be in the receivership preceedings instead of in these suits, and that there can be no special reason for haste, since the stock in the hands of defendants is tied up by the injunction, and the moneyed demands may without prejudgment of the case be said to be of doubtful merit.

A case, when ripe for trial, should certainly be fixed; but under all the circumstances of the present case, and especially in view of the fact that the receivership proceedings are in the respondent judge's own court, and therefore to a considerable extent under his control, we are not prepared to say that the postponement of the trial of these cases was unreasonable, or that our learned brother has overstepped the latitude of discretion allowed a trial court in the disposal of business coming before it.

The application for a mandamus is therefore denied at the cost of relator.

DAWKINS, J., takes no part.